## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RYAN O'CONNELL,          )
                                   )
      Petitioner,      )      Civil Action No. 20-777
                                   )      Magistrate Judge Maureen P. Kelly
      v.               )
                                   )      Re: ECF No. 4
MICHAEL ZAKEN, *Superintendent*;      )
THE DISTRICT ATTORNEY OF THE      )
COUNTY OF ALLEGHENY; I THE      )
ATTORNEY GENERAL OF THE STATE      )
OF PENNSYLVANIA,      )
                                   )
      Respondents.      )

## MEMORANDUM OPINION

For the reasons that follow, the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 4, will be denied. A certificate of appealability also will be denied.[1]

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ryan O'Connell ("Petitioner") is a state prisoner currently incarcerated at the State Correctional Institution at Greene ("SCI-Greene"), in Waynesburg, Pennsylvania. On June 30, 2011, Petitioner was convicted of three counts of aggravated assault, in violation 18 Pa. C.S.A. § 2702(a)(1), in the Court of Common Pleas of Allegheny County in Commonwealth v. O'Connell, Docket No. CP-02-CR-5216-2009. ECF No. 4 at 1. See also Docket, Com. v. O'Connell, No. CP-02-CR-5216-2009 (available at https://ujsportal.pacourts.us/Report/CpDocke

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge on August 14, 2020. ECF Nos. 8 and 10.

tSheet?docketNumber=CP-02-CR-0005216-2009&dnh=Xs43k%2FWIm7%2BV4Ml%2BJkSBI

Q%3D%3D (last visited June 29, 2023)). <u>See also</u> ECF No. 11-1 at 51.

     The trial court's opinion on direct appeal provides context and background for the instant federal habeas Petition.[2]

> The following are the facts presented at trial. The witnesses and victims all testified that on February 17, 2009, there was a party at 743 Brookline Boulevard in Pittsburgh, Pennsylvania. (Tr, pp. 52, 70, 100, 116). Approximately six to ten people were in the residence between the hours of 11 p.m. and 3. a.m. of February, 18, 2009. (Tr, p. 116). Defendant resided at the residence with his girlfriend, Angel Cyphers ("Cyphers"), during the time of the party. (Tr. p. 113). Defendant invited Ryan Hatfield over to the residence on the evening of February 17, 2009. (Tr. p. 70)[.] Ryan Hatfield ("Hatfield") brought with him Angela Sapienza ("Sapienza") and Kelly McGinnis ("McGinnis"). (Tr, p. 59). Defendant participated in drinking alcohol and smoking crack-cocaine throughout the evening. (Tr. p. 116). At some point during the evening, Hatfield, Sapienza and McGinnis fell asleep in a room adjacent to the room in which people were congregating. (Tr. pp. 56, 103). All of the other guests left the house for the night. (Tr. p. 201). Defendant and Cyphers, were the only people that remained in the house during the hours for when the incident occurred. (Tr. p. 201). The morning of February 18, 2009, Cyphers discovered Hatfield, Sapienza and McGinnis bludgeoned and bloodied on the ground of the room in which they fell asleep. (Tr. p. 123). Cyphers testified that she saw Defendant leaving the house, after the discovery of the victims, and Defendant overheard saying "I have to get out of town." (Tr. p. 123). Subsequent to finding the victims in the house, Cyphers called the police. (Tr. p. 130).
>
> Officer Michelle Baugarten of the City of Pittsburgh Police arrived on the scene on the morning of February 18, 2009 and found Hatfield, Sapienza and McGinnis bloodied and disoriented in the house located on 743 Brookline Boulevard. (Tr. p. 165). Officer

---

[2] This Court must defer to the factual findings of the highest state court to address Petitioner's claims unless they are rebutted by clear and convincing evidence. <u>Rolan v. Vaughn</u>, 445 F.3d 671, 680 (3d Cir. 2006). In this case, those are found in the Pennsylvania Superior Court's opinion on direct appeal. <u>Com. v. O'Connell</u>, No. 42 WDA 2018, 2019 WL 2085416, at *1 (Pa. Super. Ct. May 13, 2019) However, the trial court's opinion provides background that is useful for understanding the bases for Petitioner's claims for habeas relief. As such, it is reproduced here to aid the reader.

Russel James Cain Jr., with the Pittsburgh Bureau of Police, testified that in 2009 he was a detective assigned to the mobile crime unit the day of the incident. (Tr. p. 172). He collected fingerprints from the house and also collected a dumbbell from the attic bedroom where the victims were found. (Tr. p. 177). The dumbbell was covered in blood and was broken on one end. (Tr. p. 178). The broken end contained "suspected hair or fiber on the end." (Tr. P. 178).

A day after the police were called, Officer Brian Weismantle testified that Defendant came into the police office on February 19, 2009 with counsel at 1203 Western Avenue Pittsburgh, P.A. (Tr. p. 183). Defendant, through counsel, produced the clothes he was wearing the night of the incident. (Tr. p. 184). Officer Weismantle and his partner, Dale Canofari, then interviewed Defendant, in the presence of his counsel, in a conference room at the police station. (Tr. p. 187). Defendant was read his Miranda Rights. (Tr. p. 188). The two officers, Defendant and Defendant's attorney signed the Waiver of Miranda Rights form and Defendant initialed next to each paragraph appropriately waiving his Miranda Rights. (Tr. p. 189). Defendant then proceeded to made a statement to Officers Weismantle and Canofari that was video recorded. The video recorded statement was played to the jury. At trial, Officer Weismantle testified that Defendant stated as follows:

> He was at his girlfriend's house, which was 743 Brookline Boulevard the night of the incident. He said that he invited Ryan Hatfield over to socialize. People came over to the residence and were drinking alcohol, smoking marijuana, and doing pills. Defendant was drinking and smoking crack-cocaine. Defendant also smoked crack-cocaine earlier in the evening with his girlfriend. Defendant admitted that he was having trouble falling asleep and was alone in the attic of the home around 3 a.m., the night of the incident. He began to drink more alcohol and walked into the adjacent bedroom where the victims were sleeping. He was startled by a person in the bedroom, who turned out to be Mr. Hatfield. Defendant stated that he threw Mr. Hatfield to the ground, then blacked out. He returned to the living room in the attic and notice that there was blood on his hands. He proceeded to leave the house in the early morning hours of February 18, 2009.

(Tr. p. 201).

Jacquelyn Bales, employed at the Allegheny County Crime Lab, testified that she examined the clothes that Defendant was wearing for blood, semen, saliva, and other fluids of forensic significance. (Tr. p. 218). Defendant's socks, sweatshirt and boot all tested positively for blood. (Tr. p. 219). The remaining articles of clothing, jeans, shorts and shirt, had multiple areas that indicated blood, but it could not be determined positively that blood existed because the clothes appeared to be washed. (Tr. p. 225). Ms. Bales tested the dumbbell and confirmed that it was covered in blood. (Tr. p. 221).

Janine Yelenovsky, a DNA analyst for the medical examiner's office, testified that Defendant's clothing turned into the police tested positive for DNA. (Tr. p. 242). The DNA found on the dumbbell matched Mr. Hatfield and Ms. McGinnis. (Tr. p. 247). Defendant's socks tested positive for the DNA of Mr. Hatfield and Ms. McGinnis. (Tr. p. 255). Defendant's sweatshirt tested positive for the DNA of Mr. Hatfield. (Tr. p. 257). Defendant's boots tested positive for DNA of Mr. Hatfield. (Tr. p. 259). Many of the samples were found to be mixtures of DNA and blood, as such a DNA match could not be made. (Tr. p. 260)[.]

As a result of the attack, Dr. Alan Crocos testified to examining the victims at UPMC Mercy Hospital located in the South Side of Pittsburgh. (Tr. p. 44). Ms. Sapienza had multiple traumatic injuries to her head and face. (Tr. p. 45). She needed a craniotomy and procedures to her nasal bone to stop bleeding, as well as, procedures to her veins to prevent blood clots. (Tr. p. 47). Hematoma was drained from her skull and parts of her skull needed to be surgically repaired. (Tr. p. 47). She was in the hospital from February 18, 2009 to March 11, 2009, and was discharged to the traumatic brain injury facility. (Tr. p. 48). Kelly McGinnis had temporal bone skull fractures, a skull base fracture, multiple other fractures to her face and cheekbone. (Tr. p. 49). She had a craniotomy, and repairs of to her skull and face. (Tr. p. 49). Ryan Hatfield had a hemorrhagic contusion of the brain, bruises to his brain, subdural hematoma, blood clots along the lining of his brain, as well as, fractures to his skull and face. (Tr. p. 50). All three victims had to learn to walk and talk in therapy following the incident. (Tr. pp.62, 76, 108).

Trial Ct. Op. on Direct Appeal, ECF No. 11-1 at 112-15 (footnote omitted).

The facts surrounding Petitioners' crimes, as adopted by the Pennsylvania Superior Court on collateral appeal, are as follows.

On February 19, 2009, the Commonwealth charged Appellant with three counts each of Criminal Attempt (Homicide) and Aggravated Assault, arising from the beating of Ryan Hatfield, Angela Sapienza, and Kelly McGinnis at a party, which took place on the night of February 17, 2009.

The following morning, Appellant, accompanied by Charles P. Hoebler, Esquire, voluntarily presented himself to police. Appellant produced the blood-soaked clothing he was wearing on the night of the incident. Appellant, in the presence of Attorney Hoebler, also made a statement to police explaining the circumstances of the party and stating that he did not recollect being involved in the crimes.

On March 23, 2009, Appellant, still represented by Attorney Hoebler, attended a preliminary hearing after which the court held all charges for trial.

On June 15, 2011, Appellant, now represented by Paul R. Gettleman, Esquire, filed a Motion to Suppress the evidence obtained from the clothing he turned over to police and the statement he made to police, allegedly at the advice of Attorney Hoebler. Following a hearing at which Appellant testified, the suppression court denied the Motion on June 24, 2011.

Appellant's trial commenced on June 27, 2011. Relevant to the instant appeal, Appellant moved to bar the Commonwealth from impeaching him with his suppression testimony, if he chose to testify. On June 29, 2011, the trial court denied Appellant's Motion *in Limine.*

On June 30, 2011, a jury convicted Appellant of three counts of Aggravated Assault. On September 20, 2011, the trial court sentenced Appellant to serve three consecutive terms of 84 to 168 months' incarceration.

O'Connell, 2019 WL 2085416, at *1 (footnote omitted).

On September 20, 2011, Petitioner was sentenced to an aggregate term of imprisonment of 21-42 years. ECF No. 3 at 1; ECF No. 11-1 at 55-56.

Petitioner timely appealed, raising the following issues:

1. Did the trial court commit reversible error when it failed to declare a mistrial after members of the jury, during their deliberations, secretly played a CD of the

defendant's confession over and over in violation of Pa. R. Crim. P. 646 and then tried to hide that fact from the court.

2. Did the trial court commit reversible error when it did not suppress the statement due to the ineffectiveness of Attorney Hoebler in taking the defendant to the police station against his will and offering him up to the police for interrogation even after the defendant told Hoebler that he was high, sick, and did not want to speak with the police.

3. Did the trial court err when it denied the defendant's motion in limine barring the Commonwealth from questioning the defendant at trial on the testimony he offered at the suppression hearing? That ruling prevented the defendant from taking the stand at his trial[.]

Pet'r's Direct Appeal Br., Com. v. O'Connell, No. 1642 WDA 2011, 2013 WL 3284229, at *3 (Pa. Super. Ct. filed Feb. 12, 2013). The Pennsylvania Superior Court affirmed Petitioner's conviction on August 22, 2013. Com. v. O'Connell, No. 1642 WDA 2011, 2013 WL 11255547, at *1 (Pa. Super. Ct. Aug. 22, 2013). Petitioner sought reargument, but the same was denied on October 10, 2013. ECF No. 11-1 at 248 and 281.

Petitioner sought *allocatur* from the Pennsylvania Supreme Court, but that was denied on April 4, 2014. Com. v. O'Connell, 83 A.3d 661 (Pa. 2014). The record does not indicate that Petitioner filed a petition for writ of *certiorari* with the United States Supreme Court. As such, his conviction became final 90 days later, on July 3, 2014. See U.S. Sup. Ct. R. 13; see also Jenkins v. Sup't of Laurel Highlands, 705 F.3d 80, 84 (3d Cir. 2013) ("On direct review, the Pennsylvania Supreme Court denied Jenkins's petition for allowance of appeal on September 28, 2007. . . . Because Jenkins had ninety days to petition for certiorari to the United States Supreme Court, his conviction became final on December 27, 2007.").

On April 2, 2015 – 273 days after his conviction became final – Petitioner filed a petition for post-conviction relief pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546. Docket, No. CP-02-CR-5216-2009; see also ECF No. 11-1 at 333.

The PCRA trial court dismissed the PCRA petition on December 12, 2017, after conducting a hearing. ECF No. 11-1 at 650, 658.

Petitioner timely appealed the dismissal of his PCRA petition, and asserted the following issues.

> 1. Whether Attorney Hoebler was ineffective for advising [Appellant] to speak to police?
>
> 2. Whether Attorney Gettleman was ineffective for interfering with [Appellant's] right to testify by telling him he was not going to testify because [Appellant] could be impeached with [Appellant's] testimony at the suppression hearing?
>
> 3. Whether Attorney Gettleman was ineffective for failing to present evidence of [Appellant's] character for non-violence?

O'Connell, 2019 WL 2085416, at *2. The Superior Court affirmed the PCRA trial court on May 13, 2019. Id. at 1. Petitioner timely applied for reargument, ECF 11-1 at 843, but that was denied on July 24, 2019. Id. at 883. See also Docket, No. 42 WDA 2018 (available at https://ujsportal.p acourts.us/Report/PacDocketSheet?docketNumber=42%20WDA%202018&dnh=RDJUEXD7cL 2cGnPkWed8hA%3D%3D (last visited June 29, 2023)).

Petitioner timely sought leave to appeal from the Pennsylvania Supreme Court, which was denied on February 3, 2020.[3] ECF No. 11-1 at 938. See Com. v. O'Connell, 223 A.3d 1283 Pa. 2020) (Table). See also Docket, O'Connell, No. 289 WAL 2019 (available at https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=289%20WAL%202019&d nh=zF1VP0%2Fd5geUlNnrq5KMqw%3D%3D (last visited June 29, 2023)).

This Court received the instant Petition on May 28, 2020. ECF No. 1. The postmark on the envelope in which the Petition was mailed is dated May 14, 2020 – 101 days after *allocatur*

---

[3] In their Answer, Respondents mistakenly assert that the Supreme Court denied *allocatur* on February 23, 2020. ECF No. 11 at 16 and 21. As set forth above, the record indicates that the correct date is February 3, 2020. The difference in dates is not dispositive.

was denied.  ECF No. 1-1 at 1.  However, the Petition indicates – subject to penalty of perjury –
that it was placed in the prison mailing system on May 4, 2020.  ECF No. 4 at 16.  This is 91 days
after *allocatur* was denied.  Taking Petitioner at his word, the Petition is deemed filed on May 4,
2020, pursuant to the prisoner mailbox rule.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998)
("we hold that a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to
prison officials for mailing to the district court.").

Respondents answered the Petition on August 14, 2020.  ECF No. 11.  Petitioner chose not
to file a traverse, despite having been informed that he could do so.  ECF No. 13.  The Petition is
ripe for consideration.

## II.    GROUNDS FOR RELIEF

Petitioner asserts the following grounds for federal habeas relief.

Ground One:   Sixth Amendment violation due to ineffective assistance of counsel.

ECF No. 4 at 4.  When read in context with the "Supporting facts" section of the form Petition, it
is apparent that Petitioner asserts that his counsel was ineffective for multiple reasons.  Each reason
provides a separate asserted basis for relief.

A.    Advising Defendant to speak with police prior to being charged.

B.    Would not allow Defendant to testify during the trial, thereby interfering with
Defendant's right to do so.

C.    Failing to present evidence during the trial in regards to the unidentified fingerprint
on the alleged weapon.

D.    Failing to present evidence during sentencing with regards to Defendant's character
+ history of non-violence.

Id.

8

Ground Two:   Fourteenth Amendment Denial of Due Process because Defendant was not afforded due process of law.

Id. at 7.  In the "Supporting facts" section of the form Petition, Petitioner specified the underlying basis for his claim, stating:

> Defendant was not afforded a mistrial due to the fact that the jury members were accessing the Internet on court provided laptop computers + searching media postings directly related to Defendant's charges.  The Judge's tip staff caught the jury members doing so + reported it to the Judge who then seized the computers + continued trial deliberations even though the jury may have been biased + prejudiced by the media postings related to the Defendant's charges.

Id.  Petitioner concedes that this claim was not exhausted; however, he claims that he had instructed both his direct appeal and PCRA counsel to raise it, but they did not do so.  Id. at 7-8.

## III.   LEGAL ANALYSIS

### A.  The AEDPA Statute of Limitations.

At the outset, it is necessary to determine whether the Petition was timely filed within the applicable statute of limitations.  In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which established, generally, a strict one-year statute of limitations for the filing habeas petitions pursuant to Section 2254.  The applicable portion of the statute is as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

> United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry.

First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under Section 2244(d)(1)(A).

Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2).

Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. See, e.g., Munchinski v. Wilson, 807 F. Supp. 2d

242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No. 99-5, 2004 WL 825858, at *3 (W.D. Pa., Mar. 10, 2004)).

All of the above grounds for relief trigger on the date that Petitioner's conviction became final – July 3, 2014.  He filed his PCRA petition 273 days later, on April 2, 2015, stopping the statute of limitations clock on that date.  The clock resumed when his petition for *allocatur* in his PCRA proceeding was denied by the Pennsylvania Supreme Court on February 3, 2020.

Respondents argue that the Petition should be deemed filed either on May 28, 2020 – the day it was received – or June 9, 2020 – the date on which Petitioner paid the filing fee and the Petition was formally filed on the docket.  ECF No. 11 at 21 and 22 n.28.  But this argument ignores the prisoner mailbox rule.  Here, Petitioner indicates, under penalty of perjury, that the Petition was placed in the prison mail system on May 4, 2020.[4]  ECF No. 4 at 16.  With this as an effective filing date, 364 untolled days lapsed between the finality of Petitioner's conviction, and constructive filing of the Petition.  Therefore, the Petition is timely.

### B.  Exhaustion and Procedural Default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.  To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review.  See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675,

---

[4] It is true that the postmark on the envelope in which the Petition was mailed is dated May 14, 2020.  However, placing something in the prison mail system would not necessarily result in an instantaneous postmark, and delays in the prison mail system are not unheard of.  Accordingly, this Court takes Petitioner at his word that the Petition was placed in the prison mail system on May 4, 2020.

678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 60-61 (2009));

Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).

Moreover, a petitioner must present every claim raised in the federal habeas petition to the state trial court, intermediate appellate court, and highest available court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). In Pennsylvania, petitioners afford the state courts that opportunity by fairly presenting their claims to the Superior Court, either on direct review or on appeal of a petition for relief under the PCRA. Lambert, 387 F.3d at 232-34; Rodland v. Sup't of SCI Houtzdale, 837 F. App'x 915, 919 (3d Cir. 2020).

A petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987). In the case at issue, it is clear that Petitioner's claims are exhausted at the state court level at the very least in the sense that there is no state avenue for relief available to him due to the PCRA's one-year statute of limitations. See 42 Pa. C.S.A. § 9545(b).

However, beyond the question of exhaustion, a federal court may be precluded from reviewing habeas claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). This doctrine is applicable where, *inter alia*, a petitioner's claims are "deemed exhausted because of a state procedural bar[.]" Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent

and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

The PCRA's one-year statute of limitations has been held to be an "independent and adequate" state law ground for denying habeas relief. Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002).

The United States Supreme Court has held that where a petitioner has to follow state procedure within a required time period, the "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977) (failure to follow state's procedural rules results in procedural default, which bars federal review of petitioner's claims unless he can show cause and prejudice); Hull v. Freeman, 991 F.2d 86, 90-91 (3d Cir. 1993) (same). The Supreme Court in Coleman further stated that it recognized "the important interest in finality served by state procedural rules and the significant harm to the States that results from the failure of federal courts to respect them." 501 U.S. at 750.

The Supreme Court has defined "cause" as "some objective factor external to the defense." Murray v. Carrier, 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list. Id.

13

A petitioner satisfies the "prejudice" requirement by establishing that the trial was "unreliable or ... fundamentally unfair" because of a violation of federal law. Lockhart v. Fretwell, 506 U.S. 364, 372, (1993) (discussing prejudice in the context of an ineffective assistance of counsel claim). See also Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000) ("With regard to the prejudice requirement, the habeas petitioner must prove not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions[,] resulting in a denial of fundamental fairness at trial.") (internal citations and quotations omitted).

In order to show a fundamental miscarriage of justice, the United States Supreme Court requires a petitioner to demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 321 (1995) (quoting Murray, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324. Once such evidence is presented, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327.

The burden lies with a petitioner to demonstrate circumstances that would serve to excuse a procedural default. Sweger v. Chesney, 294 F.3d 506, 520 (3d Cir. 2002).

The undersigned will analyze exhaustion of each ground in Part III.D of this Memorandum Opinion, infra.

### C. Merits Standard of Review

Federal courts are permitted to grant habeas relief from the judgment of a state court only when a petition "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). The Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case. Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 405-06).

In addition, the United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely

accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pa. Dep't of Corrs., 834 F.3d 263, 368 (3d Cir. 2016) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)).  As the United States Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error."  White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Specific factual determinations by the state court are that are subsidiary to the ultimate decision to grant post conviction relief are subject to the presumption of correctness, and must be overcome by Petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See also Lambert, 387 F.3d at 235-236.  The Third Circuit has declined to adopt a "rigid approach to habeas review of state fact-finding."  Id. at 236 n.19.  If a state trial court and appellate court make conflicting factual findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those findings under state law – unless they are rebutted by clear and convincing evidence.  See Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006).

Finally, it is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts.  Ross v. Att'y Gen. of State of Pennsylvania, No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008).

### D. Consideration of Grounds for Relief

#### 1. Ground One

Each subpart of Ground One is a claim of ineffective assistance of counsel. ECF No. 4 at 4.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart, 506 U.S. at 368 (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). The United States Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance must have been unreasonable; and (2) counsel's unreasonable performance must have actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Id. at 690.

The three-part test applied by the state courts of Pennsylvania for ineffectiveness of counsel has been found by the Third Circuit not to be contrary to Strickland. Werts, 228 F.3d at 204. Thus, the Pennsylvania state court's application of that test in Petitioner's PCRA proceedings is not contrary to Strickland.[5]

---

[5]     To plead and prove ineffective assistance of counsel [under Pennsylvania's analogous three-part test] a petitioner must establish: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." Com. v. Stewart, 84 A.3d 701, 706 (Pa. Super. Ct. 2013) (en banc). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. Id.

Future v. Ferguson, No. 16-2346, 2022 WL 2307095, at *8 (M.D. Pa. June 27, 2022), certificate of appealability denied sub nom. Future v. Sup't Benner Twp. SCI, No. 22-2419, 2022 WL 18536146 (3d Cir. Dec. 6, 2022).

The first prong of the <u>Strickland</u> test requires a petitioner to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, a petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." <u>Id.</u> at 689.  The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. <u>Id.</u>  A petitioner is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2001) (quoting <u>Strickland</u>, 466 U.S. at 687).

The second prong requires a petitioner to demonstrate that errors by counsel deprived him of a fair trial and the result was unfair or unreliable. <u>Strickland</u>, 466 U.S. at 689.  To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 694.  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. <u>Id.</u>

### a.  Ground One (A)

At Ground One (A), Petitioner asserts that his pre-arrest counsel was ineffective for advising him to speak with police prior to being charged. ECF No. 4 at 4. This was exhausted as Issue No. 1 on Petitioner's PCRA appeal. <u>O'Connell</u>, 2019 WL 2085416, at *1-2.

As the Superior Court recognized, the Sixth Amendment right to counsel does not attach until the initiation of criminal proceedings against a defendant. <u>Id.</u> at *3.  <u>See also Moran v.</u>

Burbine, 475 U.S. 412, 432 (1986).  Tarapchak v. Lackawanna Cnty., 173 F. Supp. 3d 57, 81 (M.D. Pa. 2016).  Here, the record does not indicate that proceedings had been initiated against Petitioner at the time of his statement.  Indeed, he had not even been arrested.  Therefore, Petitioner has failed to demonstrate the Superior Court's determination of this ground was contrary to, or an unreasonable application of Supreme Court precedent, or based on an unreasonable factual determination.  Relief based on Ground 1(A) is denied.

**b.  Ground One (B)**

At Ground One (B), Petitioner claims that his  trial counsel was ineffective because he "[w]ould not allow Defendant to testify during the trial[.]"  ECF No. 4 at 4.  This was raised as Issue No. 2 in Petitioner's PCRA appeal, but was framed as Petitioner's trial counsel "telling him he was not going to testify because [Appellant] could be impeached with [Appellant's] testimony at the suppression hearing[.]"  O'Connell, 2019 WL 2085416, at *2.

The Superior Court held that Petitioner was estopped from raising a claim on this basis because he had made a "a knowing, voluntary, and intelligent waiver of his right to do so," and because his counsel's advice was reasonable and legally correct.  Id. at *4.  Petitioner's testimony from his suppression hearing was available for impeachment purposes, and trial counsel had a reasonable strategic basis for advising him not to testify.  Id. See also Suppression Hr'g Tr. dated June 24, 2011, at 100-02, ECF No. 11-1 at 452-54.  See also Trial Tr. dated June 27-30, 2010, at 332-33 and 369-72.  See also PCRA Hr'g Tr. dated Mar. 29 and Apr. 5, 2017, at 14-18 and 52-53.

A review of the record indicates that the Superior Court's determination was neither contrary to, or an unreasonable application of Supreme Court precedent; nor is it based an unreasonable factual determination.  Relief based on Ground One (B) is denied.

### c.  Ground One (C)

At Ground One (C), Petitioner asserts that his trial counsel was ineffective for "[f]ailing to present evidence during the trial in regards to the unidentified fingerprint on the alleged weapon[.]" This issue was not presented to the Superior Court on direct or collateral appeal, and thus is procedurally defaulted.  Further, the record provides no basis to excuse default under cause and prejudice of as a fundamental miscarriage of justice.  Therefore, relief based on Ground One (C) is denied.

### d.  Ground One (D)

At Ground One (D), Petitioner asserts that his trial counsel was ineffective for "failing to present evidence during sentencing with regards to Defendant's character + history of non-violence." ECF No. 4 at 4.  This was exhausted as Issue No. 3 at Petitioner's PCRA appeal. O'Connell, 2019 WL 2085416, at *2.

Trial counsel testified at Petitioner's PCRA hearing that he was concerned that, if he presented evidence of Petitioner's character for non-violence during sentencing, the prosecution would respond with evidence of Petitioner's "reputation for violence, including bar fights and street fights[,]" PCRA Hr'g Tr. dated Mar. 29 and Apr. 5, 2017, at 7-8 and 43-45.  Indeed, the prosecution presented such evidence at the PCRA hearing. Id. at 175

Relying on trial counsel's statement and the record of this case, the Superior Court concluded that counsel had a reasonable strategic basis for not presenting evidence of Petitioner's character for non-violence.  O'Connell, 2019 WL 2085416, at *4.  The Superior Court also found that Petitioner had not suffered prejudice from trial counsel's failure to present such evidence.  Id.

A review of the record indicates that the Superior Court's determination was neither contrary to, or an unreasonable application of Supreme Court precedent; nor is it based on an unreasonable factual determination. Relief based on Ground One (D) is denied.

### 2.  Ground Two

At Ground Two, Petitioner assts that he was denied due process.  More specifically:

> Defendant was not afforded a mistrial due to the fact that the jury members were accessing the Internet on court provided laptop computers + searching media postings directly related to Defendant's charges. The Judge's tip staff caught the jury members doing so + reported it to the Judge who then seized the computers + continued trial deliberations even though the jury may have been biased + prejudiced by the media postings related to the Defendant's charges.

ECF No. 4 at 7.  This appears to be related to Issue No. 1 on direct appeal, but asserts harm based on a different set of facts.  See O'Connell, 2013 WL 11255547, at *2 ("Appellant first argues the court erred in not granting a mistrial after the jurors played the CD [on a laptop] during their deliberations.").  Petitioner claims that he directed direct appeal and PCRA counsel to raise this claim, but they did not do so.  ECF No. 4 at 7-8.

Petitioner did not fairly present this ground to the state courts, and it is defaulted.  While Petitioner would blame his counsel for this failure, he bears the responsibility for counsel's failure.  Williams v. Taylor, 529 U.S. 420, 432 (2000).  This is consistent with the general rule that a petitioner bears the responsibility for all state post-conviction attorney errors because there is no constitutional right to counsel in state post-conviction proceedings.  Shinn v. Ramirez, 142 S. Ct. 1718, 1735 (2022) (citing Coleman, 501 U.S. at 754 and Davila v. Davis, 137 S. Ct. 2058, 2065 (2017)).  Petitioner also has not asserted an ineffective assistance of counsel claim against his direct appeal counsel for failing to raise this issue as directed.

The record provides no basis to excuse default under cause and prejudice or as a fundamental miscarriage of justice. Accordingly, relief based on Ground Two is denied.

**E. Certificate of Appealability.**

A certificate of appealability is denied, as jurists of reason would not debate that Petitioner has failed to show entitlement to relief. See also Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

**IV.   CONCLUSION**

For the foregoing reasons, the Petition, ECF No. 4, is denied, and a certificate of appealability is denied. An appropriate order follows.

Dated: June __29__, 2023                    BY THE COURT:


                                            _____
                                            MAUREEN P. KELLY
                                            UNITED STATES MAGISTRATE JUDGE




cc:    RYAN O'CONNELL
       LW8007
       SCI - Greene
       175 Progress Drive
       Waynesburg, PA 15370

       All counsel of record (*via* CM/ECF)